**[Docket Nos. 51 and 52]**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

|  |  |
|---|---|
| DORTHY ROSS and PAUL ROSS,<br><br>          Plaintiffs,<br><br>v.<br><br>LOS ANGELES PRODUCE<br>DISTRIBUTORS, LLC, et. al.,<br><br>          Defendant. | Civil No. 20-6098 (RMB/KMW)<br><br><br>**OPINION** |

APPEARANCES:

Derek Smith Law Group, PLLC
By:  Susan Cho Keesler, Esq.
1835 Market Street
Suite 2950
Philadelphia, PA 19103
          Attorney for Plaintiffs

Gordon Rees Scully Mansukhani LLP
By:  Alexander Nemiroff, Esq.
     Harry Matthew Taylor, Esq.
Three Logan Square
1717 Arch Street
Suite 610
Philadelphia, PA 19103
          Attorneys for Defendants Los Angeles Produce
          Distributors, LLC, Matthew Clark, Cote Clark, and
          Gregory Murray

**BUMB**, UNITED STATES DISTRICT JUDGE:

    Before the Court are Defendant Cote Clark's ("C. Clark")

Motion to Dismiss [Docket No. 51] and Defendants Los Angeles

Produce Distributors, LLC ("LA Produce"), Matthew Clark's ("M.

Clark"), and Gregory Murray's ("Murray") Motion to Dismiss [Docket No. 52]. For the reasons set forth herein, the Court will grant C. Clark's motion [Docket No. 51] and deny LA Produce's, M. Clark's, and Murray's motion. [Docket No. 52].

## I.   **BACKGROUND**

In early October 2018, Defendant LA Produce hired Plaintiffs Dorothy Ross ("D. Ross") and her husband, Paul Ross ("P. Ross"), as management-level employees in the LA Produce East Coast Office in Swedesboro, New Jersey. [Docket No. 36, at ¶¶ 35-38]. About three weeks later, LA Produce also hired Defendant Murray to the East Coast Office. [Id. at ¶ 44]. Plaintiffs allege that Murray had a reputation in the industry as a "pervert," and that P. Ross advocated against hiring Murray to LA Produce's owner, Defendant M. Clark, on multiple occasions. [Id. at ¶ 46]. The Complaint further alleges that M. Clark assured P. Ross that Murray would be an "asset" to LA Produce, who should be hired. [Id. at ¶ 48].

On his first day, the Complaint alleges, Murray asked "inappropriate and invasive questions of the female employees only, including what their nationality was and their marital status." [Id. at ¶50]. These comments also purportedly included racist remarks, again directed only at female employees. [Id. at ¶ 54]. Within only a few days of Murray's hiring, Plaintiffs claim that they e-mailed complaints about Murray's behavior to M. Clark and other LA Produce executives. [Id. at ¶¶ 52-54.]

2

According to Plaintiffs, Murray first began making unwanted sexual advances toward D. Ross in February 2019. [Id. at ¶ 58]. This inappropriate and unwanted behavior allegedly involved Murray making numerous sexual comments toward D. Ross [Id. at ¶¶ 59, 69, 75], sending D. Ross multiple pictures of himself in only underwear [Id. at ¶¶ 67-68, 74, 76-79, 83], and giving D. Ross "a small vibrator used for purposes of sexual arousal" as a gift. [Id. at ¶¶ 62-65]. In early March 2019, Murray allegedly made another inappropriate comment to D. Ross, while they were both at work. [Id. at ¶ 83]. D. Ross then called C. Clark-- M. Clark's daughter and the LA Produce finance department manager-- to inform her of the harassment. [Id. at ¶ 84]. C. Clark responded that she would handle the situation, and she forwarded D. Ross's complaint to Defendant ADP, which managed LA Produce's human resource department. [Id. at ¶ 85]. In addition, C. Clark allegedly e-mailed everyone at the East Coast Office to inform them that the office would be closed the following day, March 8, 2019. [Id. at ¶ 92].

On March 8, 2019, Murray reportedly came to work despite the office closure. [Id. at ¶ 95]. Plaintiffs' home is on the same property as the LA Produce East Coast Office. [Id. at ¶ 95]. According to the Complaint, Murray knew that D. Ross was at home alone while P. Ross was away on business, and he attempted to enter the house. [Id. at ¶¶ 95-96]. Murray allegedly circled the home,

trying to find a way to enter. [Id. at ¶ 96]. Although he was
unable to enter the house, he allegedly waited outside for about
45 minutes. [Id.] At this time, D. Ross called her Rabbi and asked
if he could come over for help. [Id. at ¶ 97]. D. Ross also
contacted C. Clark for further assistance, who she claims was
dismissive of her concerns [Id. at ¶ 101]. Murray then left the
property shortly after D. Ross's Rabbi arrived. [Id. at ¶ 102].

Approximately two days later, D. Ross e-mailed M. Clark with
a list detailing Murray's unwanted sexual behavior. [Id. at ¶ 105].
After D. Ross's e-mail, Murray never returned to the East Coast
Office. [Id. at ¶ 106]. Nevertheless, the Complaint claims that M.
Clark, LA Produce, and ADP largely stalled their investigation of
Murray. This allegedly culminated in M. Clark informing Plaintiffs
that he would not terminate Murray in fears of being sued [Id. at
¶ 129], and that Plaintiffs would "receive sexual harassment
training on how to prevent sexual harassment." [Id. at ¶ 130].
Plaintiffs then responded that they refused to work with Murray
again, and that LA Produce was "victim-blaming" by requiring them
to undergo harassment training. [Id. at ¶ 131].

Plaintiffs further allege that, after stating that they
refused to work with Murray again, M. Clark and C. Clark's demeanor
became less friendly and more hostile toward them. [Id. at ¶ 134].
In particular, they claim that M. Clark and C. Clark stopped
responding to emails and eventually stripped P. Ross of his

4

management responsibilities. [Id. at ¶¶ 134-38]. Finally, LA Produce terminated Plaintiffs on August 31, 2019-- approximately 5 months after they first reported Murray's inappropriate conduct. [Id. at ¶144].

In their Complaint, Plaintiffs allege that they were terminated for pretextual reasons, and that prior to their termination, they faced various forms of retaliation. Moreover, they also contend that M. Clark learned that P. Ross had interviewed with a competitor and attempted to sabotage his attempts to leave LA Produce. [Id. at ¶¶ 159-161]. As relevant here, Plaintiffs assert a claim for reprisal, under the New Jersey Law Against Discrimination, against Defendant C. Clark, and claims for Intentional Infliction of Emotional Distress against Defendants C. Clark, M. Clark, Murray, and LA Produce.[1]

II.   **STANDARD OF REVIEW**

A. Failure to State a Claim

To withstand a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads

---

[1]     Plaintiffs have also asserted numerous claims against LA Produce, Murray, and ADP, which are not at issue in the instant motions.

factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. at 662. "[A]n unadorned, the defendant-unlawfully-harmed-me accusation" does not suffice to survive a motion to dismiss. Id. at 678. "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555 (quoting Papasan v. Allain, 478 U.S. 265, 286 (1986)).

In reviewing a plaintiff's allegations, the district court "must accept as true all well-pled factual allegations as well as all reasonable inferences that can be drawn from them, and construe those allegations in the light most favorable to the plaintiff." Bistrian v. Levi, 696 F.3d 352, 358 n.1 (3d Cir. 2012). The Court may consider only the allegations in the complaint, and "matters of public record, orders, exhibits attached to the complaint and items appearing in the record of the case." Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1384 n.2 (3d Cir. 1994) (citing Chester Cnty. Intermediate Unit v. Penn. Blue Shield, 896 F.2d 808, 812 (3d Cir. 1990)).

B. Personal Jurisdiction

In assessing whether the Court has personal jurisdiction over a defendant, it must undertake a two-step inquiry. IMO Indus., Inc. v. Kiekert, AG, 155 F.3d 254, 259 (3d Cir. 1998). First, the

Court must use the relevant state's long-arm statute to see whether it permits the exercise of personal jurisdiction. Id. Second, the Court must apply principles of due process. Id. Once a defendant "raises the question of personal jurisdiction, the plaintiff bears the burden to prove, by a preponderance of the evidence, facts sufficient to establish personal jurisdiction." Carteret Sav. Bank, FA v. Shushan, 954 F.2d 141, 146 (3d Cir. 1992). To satisfy this burden, a plaintiff "need only establish a prima facie case of personal jurisdiction." Miller Yacht Sales, Inc. v. Smith, 384 F.3d 93, 97 (3d Cir. 2004). But a plaintiff cannot meet this burden "on the bare pleadings alone," and instead "must respond with actual proofs, not mere allegations." Patterson by Patterson v. F.B.I., 893 F.2d 595, 604 (3d Cir. 1990).

In New Jersey, "the first step [of the personal jurisdiction analysis] collapses into the second because New Jersey's long-arm statute provides for jurisdiction coextensive with the due process requirements of the United States Constitution. Al-Ghena Int'l Corp. v. Radwan, 957 F. Supp. 2d 511, 528 (D.N.J. 2013) (internal quotation marks omitted) (citing N.J. Ct. R. 4:4-4(c)). Personal jurisdiction is proper if a defendant has "certain minimum contacts with [New Jersey] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." Provident Nat'l Bank v. Cal. Fed. Sav. & Loan Ass'n, 819 F.2d 434, 437 (3d Cir.1987) (quoting Int'l Shoe Co. v. Washington, 326 U.S.

310, 316 (1945)). Once a party challenges personal jurisdiction, the plaintiff "must establish either that the particular cause of action sued upon arose from the defendant's activities within the forum state ('specific jurisdiction') or that the defendant has 'continuous and systematic' contacts with the forum state ('general jurisdiction')." Provident Nat. Bank, 819 F.2d at 437.

To evaluate specific jurisdiction[2], the Court relies on a three-part inquiry: (1) whether the defendant purposefully directed its activities at the forum; (2) whether the litigation arises out of or relates to at least one of the contacts; and (3) whether the exercise of jurisdiction otherwise comports with traditional notions of fair play and substantial justice. O'Connor v. Sandy Lane Hotel Co., Ltd., 496 F.3d 312, 317 (3d Cir. 2007). This test does not require a defendant's physical presence in the state, nor does it require "the bulk of harm" to occur within the forum. See Al-Ghena Int'l Corp., 957 F. Supp. 2d at 528.

When, as here, a plaintiff attempts to establish personal jurisdiction over an individual defendant for her actions as a corporate officer, the Court must evaluate additional factors. In general, "an individual whose contacts with the forum state are in his corporate capacity does not thereby become subject to jurisdiction in his individual capacity." Ragner Tech. Corp. v.

---

[2]    General jurisdiction is not asserted against C. Clark. [Docket No. 58, at 7].

<u>Berardi</u>, 287 F. Supp. 3d 541, 552 (D.N.J. 2018). Instead, "actions taken by a defendant in his or her 'corporate capacity' may only be used to establish personal jurisdiction over the defendant where those actions tend to establish individual liability." <u>Collins v. James W. Turner Constr., Ltd</u>, No. 16-2877 (FLW)(LHG), 2017 WL 210236, at *8 (D.N.J. Jan. 18, 2017). Therefore, a plaintiff must "establish[ ] that the individual defendant himself took the specific action[,]" before "actions taken in the forum by the corporate entity [can] be imputed to an individual defendant for purposes of personal jurisdiction[.]" <u>Norben Imp. Corp. v. Metro. Plant & Flower Corp.</u>, No. 05-54 (JCL), 2005 WL 1677479, at *5 (D.N.J. July 15, 2005).

### III.  **ANALYSIS**

 A. <u>Cote Clark</u>

 Defendant C. Clark contends that she is not subject to personal jurisdiction in New Jersey, and that Plaintiffs have failed to state a claim against her for either Reprisal or Intentional Infliction of Emotional Distress. Particularly, C. Clark argues that Plaintiffs cannot establish specific jurisdiction over her, because her contacts with New Jersey were limited to actions performed in her corporate capacity. In response, Plaintiffs have agreed to dismiss their Intentional Infliction of Emotional Distress claim but maintain that they have properly established the Court's jurisdiction over C. Clark and

stated a claim for reprisal. Plaintiffs contend that, although C. Clark's contacts with New Jersey may have been performed in her corporate capacity, those contacts specifically concern Plaintiff D. Ross's sexual harassment complaints, which support individual liability.

The Court finds Plaintiffs' arguments unpersuasive. Although Plaintiffs have provided numerous examples of C. Clark's contacts with New Jersey over several years, each of these examples, as pled in the Complaint, only reinforces that C. Clark's contacts were solely corporate actions. For instance, Plaintiffs argue that C. Clark's March 7, 2019, e-mail to the entire East Coast Office, which closed the office on March 8, is an example of C. Clark's intentional contact with New Jersey. But this is unquestionably a corporate action, not an individual one, and it does not impose individual liability for any of Plaintiffs' claims. Moreover, C. Clark's contacts with New Jersey relating to Plaintiffs' allegations against Murray were entirely responses to D. Ross's e-mails and complaints; each of D. Ross's examples of C. Clark's contacts begins with D. Ross initiating the text message, phone call, or e-mail.

Plaintiffs' attempts to subject C. Clark to personal jurisdiction in New Jersey are misguided. C. Clark is a California resident who availed herself of New Jersey only in her corporate capacity as an employee of Defendant LA Produce, as the Complaint

makes clear. Given her limited, non-personal contacts with New Jersey, the Court finds that the exercise of personal jurisdiction over C. Clark would "offend traditional notions of fair play and substantial justice." See Int'l Shoe, 326 U.S. at 316. In addition, Plaintiffs have failed to establish that C. Clark "purposely directed [her] activities at the forum." O'Connor, 496 F.3d at 317. To hold the opposite would upend the requirement that the defendant herself must either (1) deliberately engage in significant activities within the forum, or (2) create continuing obligations between herself and residents of the forum. Burger King Corp. v. Rudzewicz, 471 U.S. 462, 476 (1985). C. Clark's employer, Defendant LA Produce, created these continuing obligations, and C. Clark's only deliberate action with New Jersey was in fulfilling her employment obligations. The Court cannot conclude that C. Clark's only way to avoid personal jurisdiction in New Jersey was by refusing to acknowledge or respond to Plaintiffs' messages-- particularly when those messages concern both parties' employment. Thus, the Court lacks specific personal jurisdiction over Defendant C. Clark.

B. Gregory Murray

Defendant Murray argues that Plaintiffs have failed to state a claim against him for Intentional Infliction of Emotional Distress. To establish a claim for Intentional Infliction of Emotional Distress, a plaintiff must show that: (1) defendant acted

intentionally; (2) defendant's conduct was "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community;" (3) defendant's actions proximately caused her emotional distress; and (4) the emotional distress was so severe that no reasonable person could be expected to endure it. Buckley v. Trenton Sav. Fund Soc'y, 111 N.J. 355, 366 (1988). "New Jersey courts have found that the emotional distress must meet an 'elevated threshold' which is only satisfied in 'extreme cases.'" Fahnbulleh v. Steneck, No. 15-5075 (ES)(JAD), 2018 WL 1610692, at *11 (D.N.J. Apr. 3, 2018).

As a preliminary matter, the Court notes that Murray challenges Plaintiffs' Intentional Infliction of Emotional Distress claim on only the "outrageous conduct" element. [See Docket No. 52-1 at 12]. Murray contends that sexual harassment alone is insufficient to satisfy this element. In support of his argument, Murray relies on Andrews v. City of Philadelphia, 895 F.2d 1469 (3d Cir. 1990). But Murray's reliance is mistaken. In Andrews, the Third Circuit analyzed Intentional Infliction of Emotional Distress under Pennsylvania law; Plaintiffs' claims concern Intentional Infliction of Emotional Distress under New Jersey law. Indeed, New Jersey courts have held that sexual harassment can constitute "outrageous conduct" for an Intentional Infliction of Emotional Distress claim. See Taylor v. Metzger, 152

N.J. 490, 520 (1998) (["S]exual harassment may, upon sufficient evidence, constitute a prima facie case of Intentional Infliction of Emotional Distress."); Flizack v. Good News Home For Women, Inc., 346 N.J. Super. 150, 162 (App. Div. 2001) ("The racial and sexual character of [defendant's] comment, coupled with her highly inappropriate sexual misbehavior, might reasonably be found by a jury to be so egregious as to be actionable."); Subbe-Hirt v. Baccigalupi, 94 F.3d 111, 114 (3d Cir. 1996) (holding that, under New Jersey law, a jury could conclude that a defendant's use of sexual metaphors and comments toward plaintiff could satisfy the "outrageous conduct" element of an Intentional Infliction of Emotional Distress claim.").

Here, the Court finds that Plaintiffs have sufficiently stated a claim for Intentional Infliction of Emotional Distress against Murray. The Complaint recites a litany of disturbing allegations against Murray which, in part or in whole, could be considered "outrageous conduct" under New Jersey law. This includes allegations that Murray made multiple unwanted sexual advances in person, that he sent D. Ross inappropriate pictures and e-mails, and that he stalked and attempted to enter her home. Taken together, Plaintiffs have stated a claim for Intentional Infliction of Emotional Distress.

C. <u>Los Angeles Produce Distributors and Matthew Clark</u>

In the present motion [Docket No. 52], Defendants LA Produce and M. Clark moved to dismiss Plaintiffs' Intentional Infliction of Emotional Distress claims. In response, Plaintiffs agreed to voluntarily dismiss these claims. [Docket No. 55, at 2]. For the reasons discussed in the Court's July 14, 2021 Order, [Docket No. 70], the Court will construe Plaintiffs' response [Docket No. 55] as a Notice of Voluntary Dismissal pursuant to Federal Rule of Civil Procedure 41(a)(1)(A)(i), and the Intentional Infliction of Emotional Distress Claims against LA Produce and M. Clark are dismissed without prejudice.

**IV.   CONCLUSION**

Thus, for the foregoing reasons, C. Clark's motion [Docket No. 51] is **GRANTED**, and LA Produce's, M. Clark's, and Murray's motion [Docket No. 52] is **DENIED**. An appropriate Order accompanies this Opinion.


Dated: July 22, 2021                    s/Renée Marie Bumb
                                        RENÉE MARIE BUMB
                                        United States District Judge